## MARK SKINNER

*v.*

## THE CITY OF CHICAGO.

1. SPECIAL ASSESSMENTS IN CHICAGO — *an order of the common council therefor must be presented to the mayor for his approval.* An order of the common council of the city of Chicago authorizing the making of a special assessment for public improvements is embraced in that provision of the city charter which requires that " every act, ordinance or resolution passed by the common council," before it shall take effect, shall be presented to the mayor for his approval.

2. SAME — *from what time the order will take effect if not returned by the mayor.* When an act, ordinance or resolution has been presented to the mayor for his approval, and he does not return it within five days, it will take effect in the same manner as if he had signed it, but, in such case, it does not take effect until the expiration of the time thus allowed to the mayor for its consideration.

3. SAME — *premature action of the commissioners.* An assessment made by the commissioners, before the order of the common council authorizing it takes effect, is without authority and cannot be sustained.

4. So, where an order of that character has been presented to the mayor for his approval, and he does not return it within the five days allowed him for its consideration, an assessment made by the commissioners before the expiration of the five days, is premature and without legal authority.

5. SAME — *oath of commissioners, whether prematurely taken.* But the taking of the oath by the commissioners, before the order authorizing the assessment takes effect, that they will faithfully perform their duties under it, is not such an irregularity as will vitiate their subsequent proceedings.

6. COLLECTOR'S WARRANT — *of the signing thereof.* The fact that the word "*countersigned*" precedes the signature of the comptroller, to the collector's warrant, does not affect its validity ; it is nevertheless a proper signing of the warrant.

APPEAL from the Superior Court of Chicago; the Hon. JOHN M. WILSON, Chief Justice, presiding.

This was an appeal from a judgment upon a special assessment warrant, No. 227 North, for the extension of North avenue, from North Wells street, eastwardly, to North Dearborn street, in the city of Chicago.

Judgment was rendered in the court below in favor of the city, February 17, 1866, and a sale of the property ordered; whereupon the defendant appealed to this court.

The various objections to the proceedings, and the grounds therefor, are set forth in the opinion of the court.

Mr. JOHN MATTOCKS, Jr., and Messrs BORDEN & SPAFFORD, for the appellant.

Mr. S. A. IRVIN, counsel to the corporation, for the appellee.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

The order for this assessment passed the council on the 3d day of October, 1864, and was presented to the mayor on the 8th, for his approval. He never indorsed his approval, but, under the third section of chapter 3 of the city charter (Private Laws 1863, p. 49), the order not being returned within five days, it took effect on the 13th of that month. It is, however, insisted, that this is not such an ordinance or act of the council as this provision of the statute requires the mayor to approve. The language of the law is, that "Every act, ordinance or resolution, passed by the common council, before it shall take effect, and within five days after its passage, shall be presented, duly certified by the city clerk, to the mayor, for his approbation." * * * "If the mayor shall not return any act, ordinance or resolution, so presented to him, within five days, it shall take effect in the same manner as if he had signed it." The language is manifestly sufficiently comprehensive to embrace this act of the common council. It requires only to be stated to be

seen that it is an act or resolution of the common council, and within the scope of their duties.

It was again insisted, that if it is held to be an act, within the provisions of this section, under its provisions, it, by not being approved, took effect from the date of its presentation to the mayor for his approval. The section declares, that, if not approved or returned within five days after it is presented to the mayor, it shall take effect in the same manner as if he had signed it. It will not be contended, that such an act, signed by the mayor on the last day allowed him for consideration, takes effect from the day it is presented to him. It manifestly takes effect from the date of its approval. That is the last act necessary to its passage and to give it effect. Then when it is never signed by the mayor, how can it be said to take effect in the same manner as if signed by the mayor, when it is insisted that it takes effect at an earlier period than it would have done, if it had been signed by the mayor. He is allowed by law all of the five days for examination and consideration whether he will approve or return it with his objections, and the reasonable inference is, when he fails to approve, that he has employed the entire time for the purpose, and hence it only takes effect from the last of the five days. It is perfectly obvious that such an act can have no binding force until it is signed by the mayor, or the entire time allowed him has elapsed. It is not binding up to the last moment, if not approved; then by what means does it take effect five days previously? By attaching his signature, it takes effect at that precise time, and so when the last moment of time has transpired without the action of the mayor, the law gives it effect from that time. There is nothing in the language of the act to authorize a different construction.

It is contended, that, because the fifth section of chapter seven of the city charter requires the commissioners forthwith, on the passage of such an order by the common council, to proceed to make the assessment, therefore the assessment made by the commissioners in this case before the ordinance had taken effect, by the non-action of the mayor, was valid and binding. This cannot be the true construction of this provision. Such

an act cannot be said to have passed the council until the mayor has either approved it, failed to act during the five days allowed after it has been placed in his hands, or it has been returned by him to the common council and again passed by them notwithstanding his objections. Suppose, on its adoption by the common council, the commissioners were to make an assessment, and the mayor were to return it with his objections and they were to fail to again pass it, would any person contend that such an assessment would be binding for any purpose? Most assuredly not, and for the obvious reason that it would be wholly unauthorized, because no power authorizing their action existed when it was made; and there was no power because there was at the time no completed order for the assessment. Such an assessment cannot be sustained because it is made without authority.

Nor is it an answer to say, that it is merely technical, that the commissioners acted before the order was in force. Such acts deprive the owners of property of a large amount of money by the assessment, and when the commissioners act without legal authority they cannot justify their action any more than could any other three persons in the community. The fact that they may hold an office does not authorize them to assess large sums of money on other men's property, either for public or private use. In this case it is the valid, effective order of the common council, made in pursuance to the statute, that authorizes such acts. And when such power is assumed and such acts are performed, it may be well questioned whether any or all of the departments of the government possess sufficient power to legalize and render such unwarranted action binding. It is said that such action by the commissioners could not prejudice any one. This cannot be true, as it would be to deprive individuals of their property contrary to law. And every illegal act to which a citizen is compelled to submit is a wrong. Nor will it do to say the mode adopted is as good or as just as if it had been legal. The statute has prescribed the mode, and thereby declared that it is just, and its requirements must be observed before men can be deprived of their property. Three

commissioners, or even the city authorities of Chicago, cannot substitute other modes of depriving men of their property than those prescribed by the Constitution and laws.

The notice by the commissioners of the time and place of meeting for the assessment was given on the fifth of October. The time fixed was the eleventh of that month, and we have seen that the order for the assessment did not take effect until the thirteenth. Having acted two days in advance of the adoption of the order, their action was premature and without legal sanction. This rendered all subsequent action illegal, and it is without support as no legal assessment was made.

It is further objected that the oath taken by the commissioners was premature, having been before the adoption of the order for the improvement. This question was considered and disposed of in the case of *Gurnee* v. *The City of Chicago*, 40 Ill. 155. The oath only being an incident and preliminary to the assessment, it was held not to be such an irregularity as would vitiate the proceedings. But, the assessment being the principal act, and the means by which the owner is rendered liable to lose his property, it cannot be made until authority is conferred by the order. Again, the statute requires the oath, while the assessment can only be made under an order adopted by the common council. In this there seems to be a broad distinction.

The objection, that the collector's warrant was only countersigned by the comptroller, was held in that case to be without foundation, and that disposes of this objection. The judgment of the court below is reversed and the cause remanded.

*Judgment reversed.*